Good morning, and may it please the Court, I'm Ben Nutley here on behalf of Kendrick & Nutley and the Schneider Council. I'd like to try to remember to save five minutes for rebuttal if I can. I'll try and help you. Thank you. That said, looking over the pretty extensive briefing and record, I don't know what else I could add to what we've already done, so I'm prepared to take questions. Otherwise, I'm ready to submit. Any questions? Okay. I have no questions. If you want to save your entire time for rebuttal, let's hear what May it please the Court, my name is Sid Kanazawa, and I represent the class. And if there are any particular questions that the Court has for me to begin, I'll entertain. Do you both want to submit this on the briefs? Oh, I'm ready to argue, but basically, if there's a particular issue that is of concern to the Court, I was ready to address that. I have to say, I thought your briefing laid it out pretty well. I think we understand what happened, and we've looked at our prior panel directive to the District Court, and we see what Judge Riel did or did not do in the face of that order. Unless my colleagues have any questions, I don't think I have anything. I have no questions and feel I can assess this on the briefing. May I make a few comments? Absolutely. It's your time. Use it however you wish. I think that both the record and the law supports the District Court's decision. First, the record. It's important to note that in the timesheets that were submitted, there was a declaration, and the declaration is at page 268. And it says, attached here to Exhibits 1, 2, and 3, is a printout of time spent from 2007 to November 10 of 2012 in this matter. That's all it says. There's no other facts to contest Judge Riel's decision in this particular case. All it says is, this is all of our time. It has nothing in the record that says, this is all our time for challenging McGuire-Woods fees. There's nothing in the record that says why there is time in there for the incentive awards matter that was already awarded fees. There's nothing in there that says why there is time for challenging the underlying settlement or for mediation or for any of the other things that were unrelated to challenging McGuire-Woods fees. So your complaint is that there's just no way to segregate out the time allocated to those different issues? No. My argument is that Judge Riel's decision is supported by the record. That there's no conflicting evidence that challenges his decision in this record. Because secondly, the record also shows that this court has already approved Judge Riel's methodology with respect to the non-conflicted class counsel. The use of the lodestar, the use of a discounting, and the use of no multiplier because two-thirds of the time of the unconflicted class counsel was on appeal. And so if two-thirds means that there's no multiplier for the class counsel, then 100% can't mean that there should be a multiplier. But didn't he do two things? First of all, he substantially reduced the lodestar and then he applied a .75 multiplier to that reduced amount. And that made complete sense because if you look at the timesheets, the first entry that challenges McGuire-Wood's fees appears in August of 2009 and that is about halfway through the timesheets. And if you look at all the pages after that entry in 2009, and by the way, that's at 273, 282, 293, and 298, every page after that shows that there are entries that are unrelated to what this court mandated he should compensate the appellants for. And as a result, if you look at document number 781, which is class counsel's opposition, we put together a graph, a table of all the items that are not related. 791, did you say? 781. 781. And 65% of the entries were unrelated to what this court mandated should be compensated. And so Judge Real's 51% reduction seems rather generous given all of this evidence in the record itself. As far as the multiplier is concerned, the multiplier also makes sense. I mean, if you look at just the hours, the amount that was risked, the risk is the potential of losing something of value. All of the time for the appellants was on appeal and this court has already determined in the prior case involving the class counsel, unconflicted class counsel's fees, and that would be 480 Fed Appendix 878, that's the Fralick v. Whirling case. It said, you know, the no multiplier was appropriate because two-thirds of the time was on appeal  and so reducing the risk for the appellants makes complete sense because if you look at class counsel versus the appellants, the appellants risked on appeal 1,085.45 hours. By contrast, just the non-conflicted class counsel risked 6,755 hours where 622% more hours were risked than that of appellants and with respect to all of the class counsel, it was 20,500 hours and that's 1,896% more of a risk taken by class counsel than by the appellants. Moreover, I think the case that this court should focus on is Winograd because Winograd presents a very similar situation as being argued here. In Winograd, class counsel stopped the sale of a corporation when the price of the stock was $13 a share. The price of the stock went up to $33 a share and was eventually sold and class counsel said, I should get a percentage of that increase. The court said, well, the increase is not really because of you, it's because the company was doing well and the stock price went up and so class counsel had asked for 18% and the district court reduced it to 6%. When it came up to this court, this court said, no, that increase was really not caused by class counsel and it said that it would be more appropriate to apply the Lodestar methodology and it sent it back down to the district court to assess attorney's fees based on Lodestar. What's interesting about Winograd is that the objectors made essentially the same argument that is being presented here. The objectors said, we challenged class counsel's fees and we reduced it by $8 million or $13 million depending on which number you pick and they said we should get a percentage of that reduction. Again, the court said, wait a minute, that magnitude of that reduction was dependent upon the rise in the stock price, not dependent upon the conduct of counsel and the district court applied a Lodestar and this court affirmed and this court also affirmed the lack of a multiplier and said that a multiplier was not appropriate in this situation, the exact situation that we have presented here. Now, what's interesting about Winograd is what happened afterwards. After this court had it, it went back down to the district court and for the next several years, there was a huge fight over the attorney's fees. Experts were hired, depositions were conducted, discovery was conducted, the whole series of motions and the objector ended up having a Lodestar after this court of appeal situation of over $2 million and even in that circumstance, the district court awarded a million dollars or half of that Lodestar and gave no multiplier and it makes sense because in the context of these types of cases, when a guest comes to the dinner late and redistributes the food that's already on the table, they can't take credit for organizing the dinner and for the bounty that's on the table. That bounty was created by somebody else and in this case, class counsel faced a bunch of defendants and the defendants said that the maximum, the defense experts said the maximum recovery for the class was $7 million. Even if you prove 100% liability against all the defendants, $7 million. We amassed a settlement of $49 million and so that magnitude and the size of the attorney's fees involved in this case had nothing to do with what the appellants did in terms of redrawing the lines of distribution within the fund. It had to do with the size of the fund to begin with and that was, just like Winograd, was something that was outside of the context of the conduct of counsel in this particular case. Now, there is a case... Mr. Conzo, let me stop you. If I understand Mr. Nutley's argument, what he's saying is that we essentially succeeded in delivering more value to each member of the class by saving what would have been allocated from the $45 million, some $7 million or so, in fees that would have gone to McGuire Woods and therefore, because we, in essence, increased the per capita share to class members, we're entitled to a percentage of that increase in value. What's your response to that argument? My response is that the basic assumption is wrong, is that the $49 million belonged to the class to begin with and it was the court that makes a decision as to how much it should allocate to the attorneys that created that class and so it belongs to the class and to say that they gave it to the class is just the opposite way of viewing it. It was theirs. It's the class money. But what the firm did was to show that McGuire Woods had a conflict of interest which, under California law, required the firm to, I don't know, forfeit is the right word, but to lose a substantial portion of the work and so on that they put into it. Had Mr. Nutley's firm not done that, all that money would have gone to McGuire Woods and it would not have been available to distribute to each member of the class. That's true, Yaron, but the question is not so much whether it goes to the class or not. The question is which measure should you use to assess the attorney's fees and that's exactly what Winogur was about and Winogur is the exact same situation where there was a large settlement and the WPPS case is the same thing, very, very large settlement, and the court says basically, look, you've got to look at the load star because if you look at the percentage of the recovery, you're giving credit to somebody that didn't create that magnitude. So would you concede that the firm is entitled to a reasonable load star for all the work that they can show was directly attributable to successfully convincing the court that there was a conflict of interest resulting in the reduction, but no multiplier? Yes, and it wouldn't matter if the fund was $49 million, $100 million, or $500,000. So what the district court needed to do was to simply decide on a reasonable number of hours and a reasonable hourly rate and then award them whatever that number would be. And the court did exactly that and it applied a .75 multiplier because it recognized that it had already, in this case, it had already given no multiplier to the class counsel because two-thirds of their time was on appeal and here you had an appellant that 100% of their time was on appeal and so it made sense for the court to apply a .75 multiplier in order to make everything fair within the context of this particular case. And so you can't take this out of context, it has to be within the bounds of the decisions of this court already that has determined that the application of these principles to class counsel was not an abuse of discretion. It would be an abuse of discretion if you turned around and you did it completely different for the appellants and gave them a multiplier and gave them a percentage of the fund when you've already determined that that's inappropriate for class counsel. So as a decision of this court, Ninth Circuit Court and all that. The last thing I wanted to mention and I realize that I'm running down is that there is a case that gives a percentage of the fund for objectors. It's Dewey versus Volkswagen. But it's very interesting because in Dewey, the objector's contribution actually increased the fund. So it wasn't a matter of redrawing lines of an existing fund. Their actions actually, according to the court, added value to the fund. And it's interesting because the percentage of benefit that was conferred on the attorneys in that case was for one set of objectors, 10.5% of the benefit conferred and the court says that was well within the range of acceptable percentages of recovery. For another set of objectors, it said the percentage of benefit was 2.9% of the benefit conferred and it said that was well within the range of acceptable percentages of recovery. And in aggregate, it was 13.4% of the benefit conferred, which again it said it was acceptable and the important point is that all of this was 45% of their load start. In other words, they didn't get their full load start in any of these objector situations. And in fact, we have not been able to find and there was no case cited in the other opposition's briefs that gave a multiplier to any objectors. This whole thing about a benchmark of 25%, that is the risk that class counsel takes when they take on a case, when they take on a completely blank table that has nothing on it and they have to take the depositions, they have to create the theories, they have to do all those kinds of things. That's real risk and that's not the kind of risk that we're talking about in this particular context. And so I think that the district court got it right. It got it right, it said exactly what it did. If you look at the descriptions of what this court has upheld with respect to the decisions of this court, it upheld the exact same circumstances for everybody else and it would be an abuse of discretion. It would be inequitable for this court to decide differently than what the district court decided already in this particular case. Thank you. Thank you. Thank you, Your Honor. I'm sure Mr. Kanizawa would like to believe he lost his fee because of stock price movements unrelated to this case. What happened, in fact, was he was awarded a fee, his firm was awarded a fee in 2007.  Unlike the other cases, we had to take that up on appeal And as I understand, in all fairness to him, they acquired the agreement, did they not, when they acquired the firm who had initially negotiated? That's correct. And I don't want to... You're not casting assertions. No, I don't want to cast assertions on Mr. Kanizawa himself. I do want to keep my temper a little in check because Mr. Kanizawa knows very well that our work on the fee directed at his fees, at class counsel's and lead counsel's fees, began the very first day we showed up in court in 2007. We've cited the transcript for that. But didn't... I thought there was... In the record, I thought you got some kind of a fee award from the district court previously for work between 2007 and 2009. That is correct. That was for a separate benefit that we accomplished. And it was actually... Not much of our time was devoted... Not as much of our time in the 2007 time period was devoted to that. That was the class representative's incentive awards. They had been lined up for incentive awards between $25,000 and $75,000. We argued against them. The district court agreed. No appeal necessary. The court agreed right there. The difference between that other than the fact that it was a lot less money, the court took $325,000 away from the class representatives. The difference was the district court in that case... And awarded you how much? And awarded us... Well, there were two objectors groups awarded $16,000 to both. Or $16,500, I think it was, to both. The rationale and their support for it is that that really was the district court's initiative. When the district court wrote that opinion about those incentive awards, only a little of it had to do with what we had said, which was there's these ethical issues. The district court went on its own for the rest. So that's not a real comparable in any way, a comparable way to look at the subsequent thing which we did. Had to take it up on appeal. But can you help me with the chronology? I thought that the ethics issue wasn't really litigated until beginning in 2009. Correct. That's because we had to take it up on appeal. Now, when Mr. Kanazawa talks about the risks on appeal for unconflicted counsel, well, they were defending a win. Of course, they didn't get a multiplier for defending a win on appeal. That same appeal, we were getting the class counsel's fee award overturned. We were fighting a win. We were on the other side. We had the burden. We had very little precedent to support us. We had to make up our case out of whole cloth and explain it to the court, and we won. What's your response, though, to the argument that you didn't take the same risk that class counsel did from the initiation of the lawsuit? I think it is true that objectors, generally speaking, don't take the same risks. There are different risks. For example, class counsel typically face more risk in putting money into a case, putting the time into a case. They have that money at risk for expenses. That's usually more than objectors. Your expenses were only $1,700, right? That's correct. And theirs were substantially more than that. That's right. Although, I don't think anybody's briefed this, but the idea that what you're getting when you're getting an attorney's fee as a return on your investment of expenses is incorrect. What you're getting is... That wasn't what I was suggesting. I guess what I'm exploring with you is whether or not there is a significant distinction, and I think there is, between the risk that class counsel take when they file a lawsuit and then assume all of the attendant risks in the litigation through discovery and motions practice and so on, and the risk that a typical objector faces when the objector comes in at the stage where the settlement fund has already been negotiated, and now the question is how that money is going to be allocated or whether that amount is sufficient to permit the court to find that it's a reasonable settlement. I think that the stage at which the objector comes in affects the risk. There's no question that there is the risk you're talking about if you carry a case for a long time. The risk of engaging in discovery and things like that, well, there's not much. You may lose, and then you've lost your time, and you may lose the case, summary judgment, whatnot. But that's a finite... There it is. It is what it is. And I think that the question becomes... For example, in this case, we've been involved in it since 2007. We've got a heck of a lot of time in it. No, I appreciate that. And I'm not suggesting that you didn't confer any value at all, as I was exploring with Mr. Kanazawa, with regard to increasing the amount of the funds that were available for per capita distribution to the class members. But I hear his point that our benchmark cases all address what's a reasonable percentage for class counsel who've had the case from the beginning. And I'm not sure, other than that one case that he mentioned at the very end of his remarks, there are any cases that address benchmarks in this situation for objectors who succeed in reallocating the settlement funds. I think the case that you might be looking for is Rodriguez v. Dissner, which says that we... which is what we refer to as Rodriguez 2, which says we approach these the same way we do, equitably the same way for objectors as we do with class counsel. It is difficult for me to understand the difference at this point in the risk. As I said, I think in the ordinary case an objector pops in, spends 10 hours, does something, gets a benefit. I think that's got to be considered. I think the court has to say, well, wait a minute, you sallied in here and didn't take much risk. I think that's legitimate to consider that in that situation. Well, what about the point that assuming... I think he conceded that you're entitled to reasonable hourly rates and a reasonable number of hours for the Lodestar. But I heard his argument being that it's unfair to give you a large percentage of the 7 million where the non-conflicted class or the class counsel were not awarded a significant percentage. The short flip answer to that is they didn't do as good a job and didn't do as amazing a thing as we did. And I mean that. I mean that. And I don't mean... I won't take umbrage. Let me expand on that. The unconflicted counsel weren't the driving counsel earlier in the case. That was definitely McGuire Woods. They had the majority of the time. They were the ones with the laboring war. Then after, those unconflicted firms on appeal took up a much greater role. And so much of their time was built in the appeal. As the district court said, not at risk. They were defending. And their time was quite high. And so when the district court came back and said, well, I'm going to cut your time and I'm not going to give you a multiplier because most of your time was defending this appeal. I think that's completely understandable and reasonable. You don't then turn around and apply the same thing to the objectors when their situation is the opposite. Their situation was you spent time prior to this working hard on this fee forfeiture issue. You took it up on appeal, worked very hard, and completely won. Came back on remand and had to fight the lawyers and the district court on what the fee ought to be and managed to get the district court to award much, much less. Then had to defend that on appeal. But that is a significant distinction between objector risk and non-conflicted class counsel risk. They were in it from the beginning. So they assumed a larger risk, if I can use that term, which the objectors didn't assume. Which would that be, though? What they had... It would be the same risk that McGuire Woods or its predecessor had in initiating the litigation from the get-go before any settlement funds were ever resolved. But if I understand that argument correctly, then if I initiate an objection, I see a situation, I say, I think I can get money from these lawyers and move it to the class. How is that different from saying, I'm looking at this article in the newspaper that says there's perhaps an antitrust violation, I'm going to go and hit these guys, file some papers in court and get them to give money over to the class. Same thing. The only difference is they started a little earlier, right? It's not the same thing. I think you have to acknowledge that there is a difference, and I guess your point is it's not a material difference. There is a difference in the risk that the class counsel face from the very beginning, which is resolved, whatever that risk is, by the time the objectors come in because the money is now on the table. That's right, and I think it helps my point, which is to say that risk was resolved two years after they filed the case in this case. They haven't had that risk for the last five and a half years. But they had it before the defendants ever agreed to put any money on the table. What I'm trying to explore with you is the difference in the risk, and I think that is a distinction with the difference with respect to what kind of risk. But looking at it, just to take it from another perspective, as a lawyer who is qualified to do both class actions and objections, I have to ask myself, should I spend my time doing an objection, working very hard on completely whole-cloth issues, there's not a lot of precedent, I've got to sit down and actually research and put arguments together, or should I go file cookie-cutter class actions, punch the card, put in my time. Cookie-cutter class actions that may drag on for years and involve hundreds of depositions, travel expenses all over the country, production of millions of documents, I mean all the things. Rarely, and I think as we pointed out, there are lots of attorneys making a benchmark out there in class actions for doing a year's worth of work, settling the case, and out they go. And in many of those cases, the judges who award that fee are saying, gosh, I don't think you did such a great job here, it's okay, I guess, 25%. That's frustrating to somebody like me who says, wow, I just spent eight years on a case, I'm going to get completely stiff, I could do something much, much easier, my wife would be happier, all of that. And so I think if the courts are really serious about wanting to bring competent counsel in to do these cases, to challenge settlements, they need to pay them when they are successful. And I don't know of any other case where an objector has been as successful as we were in this case. So I think that is the takeaway from that, is that this is an outstanding case, an outstanding job. Certainly, unconflicted counsel did nothing wrong, but then again, they didn't do anything special either. So I think comparing that saying, well, you can't make more of a multiplier than they did, it's exactly wrong. In fact, we should make more of a multiplier than they did. There may be another case where I do something unimportant and they do something great and I'll make more of a multiplier and that will be fair then. One last thing, with respect to the district court's reduction of the Lodestar, the .75 reduction, that, no matter how you try to shore that up after the fact, that was based on what is simply a refusal to follow the mandate of Rodriguez too, and saying, I don't care what you say, Ninth Circuit, I was really the one who took this money away from them and I'm going to have that understood whether I take it from here or take it from there, I'm going to say it. Counsel, Judge Gould, if I could ask you a question. Of course. I read the earlier decision. It did not expressly say that the fee award should be based on a percentage of benefits. I thought it said that benefits should be taken into account, but that our precedent seems to me would still let the district court decide whether to use a Lodestar or to use a percentage of benefits and that decision we look at for abuse of discretion. I think you're right on both of those counts, Judge Gould. The prior decision, the Rodriguez too decision, does not say that it has to be a percentage. That's correct. And it does say that the benefit had to be taken into account. Again, it didn't say that it had to be taken into account in a percentage based way, but it did say that it had to be taken into account. And thank you for reminding me because the judge didn't do that either. It doesn't seem like a mandate violation issue. Oh, I'm sorry, Judge Gould. I meant to, with respect to the district courts, earlier the district court had said that the Schneider Council weren't responsible for the forfeiture. Had said that was this court's initiative, this court being the district court. That is what the Rodriguez 2 court said was plain error. So perhaps I don't mean to say disregarding the mandate, disregarding the letter of Rodriguez 2, which is that this forfeiture was the result of the Schneider Council and not the district court's own initiative. Okay, thank you very much. Thank you. Thank you both for the argument.
judges: Korman, Gould, Tallman